UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC C. PLICKERT**,            Case No. 1:10 CV 2151

    Plaintiff,            Judge Christopher A. Boyko

v.            REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.            Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Eric Plickert seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### BACKGROUND

**Procedural History**

In January 2004, Plaintiff filed applications for SSI and DIB, alleging disability stemming from Type I diabetes since September 1, 2002. (Tr. 126–29). His claims were denied initially and upon consideration, so he requested an administrative hearing, which was held in April 2007. (Tr. 100, 572–601). As it turns out, that was a wise decision from Plaintiff's standpoint: the administrative law judge (ALJ) found Plaintiff was disabled since June 1, 2006. (Tr. 479–491).

Unfortunately for Plaintiff, his victory was short-lived. In August 2008, the Appeals Council vacated the ALJ's decision and remanded for a second hearing. (Tr. 492–95). That second hearing, and the one from which this Court's review stems, was held in January 2009 before a different ALJ. This time, the ALJ found Plaintiff was not disabled. (Tr. 49–66). The Appeals Council then denied review (Tr. 569–71), making the ALJ's decision the final act of the Commissioner.

**Vocational Background**

At the time of the ALJ's decision, Plaintiff was 46 years old. (Tr. 65). Plaintiff completed high school and previously worked as a director of maintenance, an environmental supervisor, and a construction supervisor. (Tr. 132).

**Treatment History**

In October 2002, Plaintiff presented to Michael Roberts, M.D., to check his diabetes and an adjustment of his medication. (Tr. 257). Although he was then on insulin, Plaintiff's blood sugar was still running high. Dr. Roberts diagnosed diabetes requiring insulin, hepatitis C, and insomnia, and adjusted Plaintiff's insulin. (*Id.*). In February 2003, Dr. Roberts reported Plaintiff had poor control of his diabetes and was having some numbness in his arms and occasional decreased grip strength. (Tr. 281). Dr. Robert's recommended an EMG, which was performed and suggested Plaintiff suffered from diabetic peripheral polyneuropathy with distal involvement, demyelinating. (Tr. 282).

In May 2003, Paul Rosman, D.O., examined Plaintiff. (Tr. 237). At that time, Plaintiff complained of joint pain and swelling in his legs and feet, muscle weakness in his legs, and numbness in his feet and hands. (Tr. 237). After examining Plaintiff, Dr. Rosman diagnosed Type I, uncontrolled diabetes, loss in appetite, and hepatitis C, noting Plaintiff had lost about 40 pounds

2

in the last year. (*Id.*).

In July 2003, Plaintiff saw Robert Tupa, D.O. (Tr. 284). In a report written in May 2004, Dr. Tupa summarized Plaintiff's medical history, including Plaintiff's issues with his blood sugar. (Tr. 284–85). Dr. Tupa noted that although Plaintiff was aware of the need to regularly use insulin, he was not doing so, stating Plaintiff was "electing not to comply" due to his fear of needles. (Tr. 285). Dr. Tupa also stated "[w]e believe that this gentleman has a significant problem in disability because of his diabetes. We have attempted to direct him and facilitate his follow-up with a number of specialist[s] that need to attend this particularly difficult situation." (*Id.*). Dr. Tupa noted that part of the reason this was a "particularly difficult situation" was "because of [Plaintiff's] noncompliance" with his insulin injections. (*Id.*).

Plaintiff continued seeing Dr. Tupa multiple times per year from 2005 through 2009 (Tr. 351, 453, 455, 456, 457, 460, 521–27), generally complaining of pain and numbness in his feet and lower extremities (Tr. 351, 457). After a visit in 2009, Dr. Tupa diagnosed insulin dependent diabetes mellitus and diabetic neuropathy. (Tr. 521–26).

Dr. Tupa later referred Plaintiff to Gregg Faiman, M.D., an endocrinologist, who began examining Plaintiff in March 2004. (Tr. 40). Dr. Faiman diagnosed Plaintiff with Type I diabetes, uncontrolled. Dr. Faiman continued to see Plaintiff from 2004 through 2009, and over the course of that time, reported findings consistent with those of Dr. Tupa: Plaintiff suffered from peripheral neuropathy, had a loss of sensation in his feet, had variations in his blood sugar, and inconsistently took his insulin. (Tr. 297–304, 412–13, 416, 418, 421–22, 425).

Dr. Faiman also completed a Multiple Impairment Questionnaire in April 2009, which was submitted to the Appeals Council, but not the ALJ. (Tr. 561–68). Dr. Faiman diagnosed extreme

3

numbness and weakness in lower extremities, neuropathy, and pain of six on a ten-point scale. (Tr. 562–63). Dr. Faiman opined Plaintiff could sit for two hours per day and would need to get up and move around every fifteen to thirty minutes. (Tr. 563). He also believed Plaintiff could occasionally lift and carry five to ten pounds and had no significant limitations with repetitive reaching, handling, fingering, or lifting. (Tr. 564).[1]

In October 2004 consultative physician A.K. Bhaiji, M.D., examined Plaintiff at the request of the state agency. (Tr. 335–37). Plaintiff reported he had been an insulin-dependent diabetic since 1998 and since that time had been losing weight and noticing tingling and numbness in his lower extremities. (Tr. 335). Dr. Bhaiji concluded Plaintiff "would not have difficulty with work-related physical activities such as sitting. May have difficulty standing, walking, lifting and carrying objects. No difficulty handling objections. No difficulty hearing or speaking." (Tr. 337).

In November 2004, Anton Freihofner, M.D., a state agency reviewing physician, assessed Plaintiff's residual functional capacity (RFC). (Tr. 343–44). Dr. Freihofner determined Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and never climb or stoop. (Tr. 343–44). He also noted Plaintiff had limited feeling in his hands (Tr. 345), but found Plaintiff's allegations of the severity of his symptoms only partially credible due to his history of non-compliance in administering his insulin. (Tr. 347).

---

[1.] The Court cites to this portion of the record only for purposes of completeness and will not consider it in its decision. Dr. Faiman's completed questionnaire was not before the ALJ and the Appeals Council denied review. In the Sixth Circuit, only new evidence specifically incorporated by the Appeals Council can be considered on judicial review unless a Plaintiff can show good cause why the Court should order a remand pursuant to sentence six of 42 U.S.C. § 405(g). *Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir. 1993). Here, Plaintiff has not attempted to show good cause and the Court sees none. Therefore, the Court will only consider the evidence that was before the ALJ.

In June 2007, consultative physician Dariush Saghafi, M.D., evaluated Plaintiff. (Tr. 466–68). Dr. Saghafi noted Plaintiff had normal muscle tone and bulk in the upper and lower extremities, 5/5 upper extremity strength, 4/5 lower extremity strength, and normal spine, shoulder, elbow, wrist, hand, and finger range of motion. (Tr. 467–68, 470–72). Dr. Saghafi also noted Plaintiff did not suffer from any focal deficits, neurologically speaking, but did suffer from "moderately severe sensory neuropathy in the lower extremities and moderate degree of motor neuropathy in the lower extremities as well." (Tr. 468). Dr. Saghafi concluded Plaintiff was only able to push, pull, or lift ten pounds, and able to bend, walk, and stand for five to fifteen minutes at a time (Tr. 468), and accordingly was unable to perform even sedentary work (Tr. 468, 474, 476).

**Administrative Hearing**

At the administrative hearing, Plaintiff testified he lives with his father, but could dress himself and prepare light meals. Plaintiff also testified he could go grocery shopping with his father, watch television, go fishing, and perform woodworking at times. (Tr. 618–19). Plaintiff also estimated he could sit in a chair for twenty to thirty minutes and walk five to minutes at most. (Tr. 618).

Also testifying was Timothy Frei, M.D., a medical expert. (Tr. 605–13). Dr. Frei stated the record was sufficient to allow him to form an opinion as to Plaintiff's medical history. (Tr. 607). Dr. Frei opined that Plaintiff main problem was his Type I diabetes with significant peripheral neuropathy. (Tr. 608). Dr. Frei believed Plaintiff could lift ten to twenty pounds and his ability to sit would not be limited, although his ability to stand was significantly limited. (Tr. 610). Dr. Frei concluded Plaintiff could perform sedentary work and that Plaintiff's postural limitations would not affect his ability to do so. (Tr. 611).

Dr. Frei also stated he reviewed Dr. Saghafi's opinion that Plaintiff was limited to sitting for five to ten minutes, standing for ten minutes, and walking for fifteen minutes per workday. (Tr. 612). Dr. Frei believed Dr. Saghafi's limitations were not supported by his own objective findings that Plaintiff had good strength. (Tr. 612).

Finally, a vocational expert testified that Plaintiff's past relevant work constituted medium, skilled work. (Tr. 620). The vocational expert was not asked about, and did not opine upon, the number of jobs in the regional or national economy Plaintiff could perform.

**The ALJ's Decision**

In February 2009, the ALJ issued his decision, finding Plaintiff was not disabled. The ALJ determined Plaintiff retained the RFC to perform a full range of sedentary work. (Tr. 56–64). Based on this RFC, the ALJ concluded that although Plaintiff could not perform any past relevant work, the Medical-Vocational Guidelines nonetheless directed a finding of "not disabled". (Tr. 65–66).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed

6

a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD OF DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age,

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)–(f) & 416.920(b)–(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Plaintiff asserts the ALJ erred in three ways: (1) he failed to properly weigh the medical source opinions; (2) he failed to properly evaluate Plaintiff's credibility; and (3) he improperly relied upon the Medical-Vocation Guidelines. (Doc. 13, at 10, 14, 16). Each of these issues will be addressed in turn.

**Medical Source Opinions**

Plaintiff first argues the ALJ improperly gave "controlling" weight to the opinion of medical expert Dr. Frei. Plaintiff contends there is no basis in the regulations to give "controlling" weight to a medical expert. Plaintiff also asserts the ALJ failed to give enough weight to the opinions of Drs. Saghafi and Tupa because he did not use the factors found in the regulations to weigh their opinions.

While as a medical expert, Dr. Frei's opinion may not be entitled to controlling weight, *see* 20 C.F.R. § 404.1527(d), the ALJ was certainly permitted to consider it, § 404.1527(f)(2)(iii). Furthermore, simply because the ALJ said Dr. Frei's opinion was entitled to "significant and controlling weight" does not necessarily mean it was given the kind of "controlling" weight reserved for a treating source's opinion. Rather, the Court will look to see how the ALJ *actually* treated Dr. Frei's testimony.

Review of the ALJ's entire opinion – rather than one phrase in isolation – reveals the ALJ

8

properly considered all medical opinions and afforded each appropriate weight. In his opinion, the ALJ comprehensively summarized the findings of Plaintiff's doctors and concluded:

> the claimant consistently presents as alert, oriented and in no acute distress. Multiple physicians document that the claimant is neurologically intact, has intact motor strength, is ambulatory and any findings of diminished sensation in the bilateral feet are not stipulated to be preclusive of driving or walking as alleged by the claimant . . . The undersigned concludes that the above examinations *in conjunction with* Dr. Frei's medical expert testimony wholly support the sedentary residual functional capacity . . . .

(Tr. 64) (emphasis added). In other words, the ALJ relied upon the medical opinions of Plaintiff's physicians, in combination with Dr. Frei's testimony, in determining Plaintiff's RFC, rather than treating Dr. Frei's opinion, on its own, as controlling.

Make no doubt, the ALJ gave Dr. Frei's opinion significant weight, but he was permitted to do so given it was consistent with other medical evidence. *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Dr. Frei concluded Plaintiff's primary problem was his Type I diabetes and accompanying peripheral neuropathy (Tr. 57, 608), which would not limit his ability to sit, although it would limit his ability to stand (Tr. 610–611). That opinion was consistent with, for instance, the opinion of consultative physician Dr. Bhaiji, who opined Plaintiff would not have difficulty with sitting, handling objects, hearing, or speaking, but may have difficulty standing, walking, and lifting and carrying objects. (Tr. 61, 337). Dr. Frei's opinion was also consistent with that of state agency reviewing physician Dr. Freihofner, who concluded Plaintiff could sit (with normal breaks) for about six hours in an eight-hour workday, occasionally lift 50 pounds, and frequently lift 25 pounds. (Tr. 343–44).

The ALJ also did not err by discounting Dr. Saghafi's opinion that Plaintiff was limited to

9

sitting for only five minutes, standing for only ten minutes, and walking for only fifteen minutes in an eight-hour workday. (Tr. 58, 474). Dr. Saghafi found Plaintiff had normal muscle tone and bulk in his lower and upper extremities, 4/5 lower extremity strength, normal spine, shoulder, elbow, wrist, hand, and finger range of motion, could lift, push, and pull up to ten pounds, and could travel independently. (Tr. 467–68). Dr. Saghafi also noted Plaintiff did not suffer from focal deficits neurologically; however, he did find Plaintiff suffered from "moderately severe sensory neuropathy" and a "moderate degree of motor neuropathy" in the lower extremities. (Tr. 468).

Dr. Saghafi's ultimate conclusion – that Plaintiff could only sit for several minutes at a time – "did not make sense" to Dr. Frei, given Dr. Saghafi's other findings regarding Plaintiff's strength. (Tr. 610, 612–13). Furthermore, the limitations Dr. Saghafi found were much greater than the limitations of other physicians, such as Drs. Bhaiji and Freihofner. (Tr. 337, 343–44). In short, substantial evidence supports the ALJ's decision to discount Dr. Saghafi's proposed sitting limitation, given Dr. Saghafi's objective medical findings. *See Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").

Plaintiff also argues that in weighing the opinions of Dr. Frei and Dr. Saghafi, the ALJ failed to take into consideration the factors listed in 20 C.F.R. § 404.1527(d): (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the physician; and (6) any other factors that support or contradict the opinion.

This argument also fails. The ALJ expressly stated he evaluated all of the opinions in light

of this standard. (Tr. 57). But even if he had not expressly done so that would not alter the outcome here. The Sixth Circuit has noted that "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion", he does not need to do so:

> an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)). Here, the ALJ resolved conflicts in the medical testimony (particularly between Dr. Saghafi's opinion and the opinions of all other medical sources), giving reasons for doing so, in favor of finding Plaintiff is capable of sedentary work. That conclusion is supported by substantial evidence and must be upheld. (Tr. 337, 343–44, 610, 612–13).

Plaintiff also argues the ALJ improperly weighed Dr. Tupa's opinion, but this argument is also unavailing, for several reasons. First, contrary to Plaintiff's assertion, the ALJ did not "entirely ignore" Dr. Tupa's opinion. The ALJ not only summarized Dr. Tupa's medical findings (Tr. 60, 64), but stated Dr. Tupa's findings (along with those of other doctors) were "afforded significant weight and support the ultimate findings of this decision." (Tr. 64). The ALJ clearly did not disregard or reject Dr. Tupa's opinion.

Second, Dr. Tupa's statement that Plaintiff "has a significant problem in disability because of his diabetes" (Tr. 285) does not support a finding that Plaintiff is "disabled" as that term is understood under the regulations. In his report, Dr. Tupa spoke extensively about Plaintiff's noncompliance with his insulin medication, but did not address Plaintiff's functional limitations. (Tr. 284–85). Without addressing Plaintiff's functional limitations, any conclusion by Dr. Tupa that

11

Plaintiff was disabled was simply that: an unsupported conclusion. The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Watts v. Comm'r of Soc. Sec.*, 176 F. App'x 290, 294 (6th Cir. 2006) ("[N]one of Watt's treating doctors . . . made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence."); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (ALJ under no duty to grant medical opinion great weight when there is no opinion given regarding functional abilities).

And last, even construing Dr. Tupa's statement as a conclusion Plaintiff is disabled, that conclusion is not entitled to any special weight; the ultimate disability finding is one reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p (noting the ALJ must consider a doctor's opinion on an issue reserved to the Commissioner, but must evaluate in light of the factors listed in 20 C.F.R. § 404.1527(d)).

### Plaintiff's Credibility

Plaintiff next argues the ALJ improperly evaluated Plaintiff's testimony regarding his disabling limitations. "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475 (citing *Young v. Sec'y of HHS*, 925 F.2d 146, 150–51 (6th Cir. 1990)); *see also* 42 U.S.C. § 423(d)(5)(A). Here, there is no question doctors diagnosed Plaintiff with diabetes and peripheral neuropathy, and have "therefore supplied the requisite objective medical condition to support" Plaintiff's claim. *Id.* However, "an ALJ is not required to accept a claimant's

12

subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability." *Id*. at 476. Furthermore, "an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

Here, Plaintiff testified he needs to stand up after ten to twenty minutes of sitting and take walks five to ten minutes long. (Tr. 615). He also testified his neuropathy had intensified, causing a loss of sensation in his forearms and resulting in Plaintiff dropping items (Tr. 616), although Plaintiff admitted he is able to dress himself, go fishing, and perform woodworking. (Tr. 618). While, generally speaking, these activities are not necessarily inconsistent with a finding of disability, *see Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967), they support the ALJ's credibility findings here. Plaintiff claimed his neuropathy had gotten worse and was affecting his grip strength (Tr. 616), but that assertion was undermined by Plaintiff's admission he could perform activities of daily living involving his hands (Tr. 618).

The Court will also note the ALJ did not dismiss Plaintiff's testimony out of hand. He believed Plaintiff's subjective complaints of pain "may have some merit", but found they were not as debilitating as Plaintiff made them out to be, given the objective medical evidence. In short, the ALJ relied on factors he was permitted to rely upon, *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990), and which support his credibility finding. There was no error in this regard.

13

**The Medical-Vocational Guidelines**

Finally, Plaintiff contends the ALJ erred by relying upon the Medical-Vocational Guidelines in determining there were a sufficient number of jobs in the national economy for Plaintiff to perform.

After the ALJ determines the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity existing in the national economy. *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations and quotations omitted).

The Commissioner may meet his burden at step five by referring to the Medical-Vocational Guidelines, also referred to as the "Grids", unless the claimant has a "nonexertional limitation[] that significantly limit[s] the range of work permitted by his exertional limitations." *Cole*, 820 F.2d at 771.  However, "before reaching the conclusion that the grid will not be applied because [of the alleged] nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987).

The reason Plaintiff believes the ALJ erred in relying on the Grids (specifically, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.21 and 201.28) stems from his belief that the ALJ's determination Plaintiff could perform a full range of sedentary work is not supported by substantial

14

evidence. Under the regulations, sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ found Plaintiff could perform the "full range" of sedentary work, without limitation, because Plaintiff was able to sit for six hours per day and walk up two hours per day. The ALJ also found Plaintiff "has no communicative, environmental, manipulative, postural or visual limitations." (Tr. 56).

All of these findings are supported by substantial evidence. As described above, substantial evidence supports the finding that Plaintiff would have no trouble sitting during the workday. (Tr. 337, 343–44, 610, 612–13). Dr. Bhaiji stated Plaintiff would have no difficulty handling objects. (Tr. 61, 337). And Dr. Frei testified Plaintiff's postural limitations would not impact his range of sedentary work. (Tr. 58, 611). The limitations Plaintiff says prevented the ALJ from relying on the Grids – such as limitations with bending, balancing, stooping, kneeling, crouching, and exposure to heights – do not affect Plaintiff's ability to perform sedentary work. (Tr. 611).

Because substantial evidence supports the ALJ's determination Plaintiff can perform the full range of sedentary work, the ALJ did not err in using the Medical-Vocational Guidelines.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and applicable law, the undersigned finds the Commissioner's decision denying benefits supported by substantial evidence

and therefore recommends it be affirmed.

                                                        s/James R. Knepp II
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).