UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIC C. PLICKERT, ) | CASE NO.:1:10-CV-2151-CAB |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| vs. ) | |
| ) | OPINION AND ORDER ADOPTING |
| COMMISSIONER OF SOCIAL ) | RECOMMENDATION OF |
| SECUIRTY ) | MAGISTRATE JUDGE |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J.**:

    This matter comes before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. The Report and Recommendation ("Report") advised the Court to affirm the Commissioner of Social Security's decision to deny Plaintiff, Eric Plickert, disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the following reasons, the Court ADOPTS the Report and Recommendation of the Magistrate Judge and AFFIRMS the denial of benefits.

### I. FACTS

    The Court adopts the Magistrate Judge's findings of fact as provided in the Report, and as follows:

**Procedural Background**

In January 2004, Plaintiff filed applications for DIB and SSI, alleging disability beginning September 1, 2002, stemming from diabetes and other digestive disorders. His claims were denied. Subsequently, Plaintiff requested an administrative hearing, which was held in April 2007. At that hearing, the Administrative Law Judge ("ALJ") found Plaintiff was disabled since June 1, 2006. In August 2008, the ALJ's decision was vacated by the Appeals Council and remanded for a second hearing. At that second hearing, held in January 2009, a different ALJ found Plaintiff was not disabled. The Appeals Council denied review, making the second ALJ's decision the final act of the Commissioner. That final decision brings this case before the Court.

**Medical Background**

In October 2002, Plaintiff presented to Michael Roberts, M.D., to check his diabetes and adjust his medication. Tr. 257. Although he was then on insulin, Plaintiff's blood sugar was still running high. Dr. Roberts diagnosed diabetes requiring insulin, hepatitis C, and insomnia, and adjusted Plaintiff's insulin. *Id.* In February 2003, Dr. Roberts reported Plaintiff had poor control of his diabetes and was having some numbness in his arms and occasional decreased grip strength. Tr. 281. Dr. Robert's recommended electromyography, which was performed, and suggested Plaintiff suffered from diabetic peripheral polyneuropathy with distal involvement, demyelinating. Tr. 282.

In May 2003, Paul Rosman, D.O., examined Plaintiff. Tr. 237. At that time, Plaintiff complained of joint pain and swelling in his legs and feet, muscle weakness in his legs, and numbness in his feet and hands. Tr. 237. After examining Plaintiff, Dr. Rosman diagnosed

Type I, uncontrolled diabetes, loss in appetite, and hepatitis C.  *Id.*

In July 2003, Plaintiff saw Robert Tupa, D.O.  Tr. 284.  In a report written in May 2004, Dr. Tupa summarized Plaintiff's medical history, including Plaintiff's issues with his blood sugar.  Tr. 284–85.  Dr. Tupa noted that although Plaintiff was aware of the need to regularly use insulin, he was not doing so, stating Plaintiff was "electing not to comply" due to his fear of needles.  Tr. 285.  Dr. Tupa also stated "[w]e believe that this gentleman has a significant problem in disability because of his diabetes.  We have attempted to direct him and facilitate his follow-up with a number of specialist[s] that need to attend this particularly difficult situation."  Dr. Tupa noted that part of the reason this was a "particularly difficult situation" was "because of [Plaintiff's] noncompliance" with his insulin injections.  *Id.*

Plaintiff continued seeing Dr. Tupa multiple times per year from 2005 through 2009 (Tr. 351, 453, 455, 456, 457, 460, 521–27), generally complaining of pain and numbness in his feet and lower extremities.  Tr. 351, 457.  After a visit in 2009, Dr. Tupa diagnosed insulin dependent diabetes mellitus and diabetic neuropathy.  Tr. 521–26.

Dr. Tupa referred Plaintiff to Gregg Faiman, M.D., an endocrinologist, who began examining Plaintiff in March 2004.  Tr. 40.  Dr. Faiman diagnosed Plaintiff with Type I diabetes, uncontrolled.  Dr. Faiman continued to see Plaintiff from 2004 through 2009, and over the course of that time, reported findings consistent with those of Dr. Tupa:  Plaintiff suffered from peripheral neuropathy, had a loss of sensation in his feet, had variations in his blood sugar, and inconsistently took his insulin.  Tr. 297–304, 412–13, 416, 418, 421–22, 425.   In October 2004, consultative physician A.K. Bhaiji, M.D., examined Plaintiff at the request of the state agency.  Tr. 335–37.  Plaintiff reported he had been an insulin-dependent

diabetic since 1998 and since that time had been losing weight and noticing tingling and numbness in his lower extremities. Tr. 335. Dr. Bhaiji concluded Plaintiff "would not have difficulty with work-related physical activities such as sitting. May have difficulty standing, walking, lifting and carrying objects. No difficulty handling objections. No difficulty hearing or speaking." Tr. 337.

In November 2004, Anton Freihofner, M.D., a state agency reviewing physician, assessed Plaintiff's residual functional capacity ("RFC"). Tr. 343–44. Dr. Freihofner determined Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and never climb or stoop. Tr. 343–44. He also noted Plaintiff had limited feeling in his hands (Tr. 345), but found Plaintiff's allegations of the severity of his symptoms only partially credible due to his history of non-compliance in administering his insulin. Tr. 347.

In June 2007, consultative physician Dariush Saghafi, M.D., evaluated Plaintiff. Tr. 466–68. Dr. Saghafi noted Plaintiff had normal muscle tone and bulk in the upper and lower extremities, 5/5 upper extremity strength, 4/5 lower extremity strength, and normal spine, shoulder, elbow, wrist, hand and finger range of motion. Tr. 467–68, 470–72. Dr. Saghafi also noted Plaintiff did not suffer from any focal deficits, neurologically speaking, but did suffer from "moderately severe sensory neuropathy in the lower extremities and moderate degree of motor neuropathy in the lower extremities as well." Tr. 468. Dr. Saghafi concluded Plaintiff was only able to push, pull, or lift ten pounds, and able to bend, walk, and stand for

five to fifteen minutes at a time (Tr. 468), and, accordingly, was unable to perform even sedentary work.  Tr. 468, 474, 476.

**Testimony**

At the administrative hearing, Plaintiff testified he lives with his father, but could dress himself and prepare light meals.  Plaintiff also testified he could go grocery shopping with his father, watch television, go fishing, and perform woodworking at times.  Tr. 618–19.  Plaintiff also estimated he could sit in a chair for twenty to thirty minutes and walk five to 10 minutes at most.  Tr. 615.

Also testifying was Timothy Frei, M.D., a medical expert.  Tr. 605–13.  Dr. Frei stated the record was sufficient to allow him to form an opinion as to Plaintiff's medical history.  Tr. 607.  Dr. Frei opined that Plaintiff's main problem was his Type I diabetes with significant peripheral neuropathy.  Tr. 608.  Dr. Frei believed Plaintiff could lift ten to twenty pounds and his ability to sit would not be limited, although his ability to stand was significantly limited.  Tr. 610.  Dr. Frei concluded Plaintiff could perform sedentary work and that Plaintiff's postural limitations would not affect his ability to do so.  Tr. 611.

Dr. Frei also stated he reviewed Dr. Saghafi's opinion that Plaintiff was limited to sitting for five to ten minutes, standing for ten minutes, and walking for fifteen minutes per workday.  Tr. 612.  Dr. Frei believed Dr. Saghafi's limitations were not supported by his own objective findings that Plaintiff had good strength.  Tr. 612.  Finally, a vocational expert testified that Plaintiff's past relevant work constituted medium, skilled work.  Tr. 620.  The vocational expert was not asked about, and did not opine upon, the number of jobs in the regional or national economy Plaintiff could perform.

## II.  STANDARD OF REVIEW

**A. Civil Rule 72(b) Standard**

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review *de novo* any finding or recommendation of the Magistrate Judge's Report and Recommendation that has been specifically objected to.  Failure to make a timely objection to any aspect of the Report and Recommendation may waive the right to appellate review of the District Court's order.  *U.S. v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).  The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party.  *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

> Local Rule 72.3(b) provides in pertinent part:
>
> The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

**B. Standard of Review for Administrative Law Judge Findings**

The findings of the ALJ in a social security hearing, if supported by substantial evidence, are conclusive.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  The Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("The [ALJ's] decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary

decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).

Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." *Richardson* at 401. It consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson* at 401.

### III.  PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

The Magistrate Judge advocated upholding the final decision of the Commissioner, finding substantial evidence supported:  the ALJ's weighting of the medical source opinions; the ALJ's adverse credibility determination of Plaintiff; and the ALJ's reliance on the Medical-Vocational Guidelines.  Plaintiff objects to each of these findings.

**A.  The ALJ Properly Weighed the Medical Source Opinions.**

Plaintiff's objection to the ALJ's weighting of the medical source opinions can be subdivided into two discrete contentions:  1) the ALJ's reliance on the opinions of Drs. Bhaiji, Frei, and Freihofner was insufficient to support the RFC found for Plaintiff because it was contradicted by well-supported opinions from a treating physician, Dr. Saghafi; and 2) the ALJ's explanation of how he weighed the medical source opinions of Drs. Saghafi and Tupa was legally insufficient.  The Court rejects both of these contentions.

Plaintiff offers several Sixth Circuit cases supporting the proposition that a treating physician's report must be afforded greater weight than a non-treating source.  Obj. 1-2.  As a general rule, Plaintiff is correct; but the conclusions of a treating physician do not trump conflicting medical opinions in all instances.  "ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own

treatment notes." *Leeman v. Comm'r of Soc. Sec.,* 449 Fed.Appx. 496, 497 (6th Cir. 2011) (citing *Payne v. Comm'r of Soc. Sec.,* 402 Fed.Appx. 109, 112–13 (6th Cir. 2010); *Gaskin v. Comm'r of Soc. Sec.,* 280 Fed.Appx. 472, 475 (6th Cir. 2008)). In the case at bar, there is sufficient evidence to discount Dr. Saghafi's opinion based on information in his own medical notes.

Dr. Frei testified, after reviewing Dr. Saghafi's notes, that Dr. Saghafi's conclusion that Plaintiff could only sit for minutes at a time "did not make sense," in light of Dr. Saghafi's other strength, range of motion, and sensory observations. Tr. 610, 612-13. Based on this testimony, the ALJ could have properly concluded that the treating physician's opinion did not deserve absolute deference. In fact, the ALJ specifically noted this inconsistency in his report: "It bears reiterating that the undersigned takes exception with Dr. Saghafi's opined limited sitting, standing and walking capacity regarding the claimant as these are inconsistent with his objective findings on examination as testified by Dr. Frei." Tr. 64.

Furthermore, after exhaustively reciting Plaintiff's relevant medical history, the ALJ observed:

> *Multiple physicians document* that the claimant is neurologically intact, has intact motor strength, is ambulatory and any findings of diminished sensation in the bilateral feet are not stipulated to be preclusive of driving or walking as alleged by the claimant . . . The undersigned concludes that the above examinations *in conjunction with* Dr. Frei's medical expert testimony wholly support the sedentary residual functional capacity . . . Although the claimant's subjective complaints may have some merit, *the totality of the supporting medical evidence* does not provide clinical correlation of his symptomology to the degree of debility alleged with objective findings on examination.

Tr. 64 (Court's emphasis). The Court's examination of the evidence comports with the ALJ's

findings above.  There is substantial evidence in the record to support the ALJ's findings.  *See Cox v. Comm'r of Soc. Sec.,* 295 F.App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician over another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").

Plaintiff also contends that the ALJ failed to sufficiently explain how he weighed Drs. Saghafi and Tupa's opinions.  The Court disagrees.  An ALJ is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion."  *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007).  The ALJ articulated both the weight and reason for the weighting in his decision.  To wit, "Dr. Faiman, Dr. Rosman, Dr. Yousef, Dr. Raja, Dr. Saghafi, Dr. Zimmer, Dr. Roberts, Dr. Bhaiji, and Dr. Tupa's objective findings on examination are afforded significant weight and support the ultimate findings of this decision."  Tr. 64.  As this sentence makes clear, the ALJ gave significant weight to the objective findings of Drs. Tupa and Saghafi, along with the other doctors, because their objective findings were in congruence with one another.  Furthermore, immediately after explaining his weighting of the opinions, the ALJ addressed and resolved the conflict between a portion of Dr. Saghafi's opinion and that of the other doctors, discussed above.  The Court finds this is sufficient to meet the "good reasons" requirement.

## B. The ALJ Properly Evaluated Mr. Plickert's Credibility.

"An ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and

credibility.' However, they must also be supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531.

Plaintiff argues that "[t]he ALJ's failure to adequately consider [Plaintiff's] testimony under the factors in SSR 96-7p or offer any other cogent [sic] for finding him not credible was error." Obj. at 5. Plaintiff emphasizes his testimony describing the tingling and burning sensations, as well as uncontrollable twitches and spasms in his legs (Tr. 579), leg swelling with inactivity (Tr. 581), and descriptions of his own limited daily exertions (Tr. 582, 615, 618) were evidence of disability consistent with the medical record. The ALJ did not find this testimony credible:

> It bears reiteration that the claimant's activities of daily living as reported throughout his progress notes and by his testimony document that he is independent regarding personal care, he does home repairs, performs some household chores and has driven in the past. Specifically, he has admitted to exercising "alot", being very active and doing heavy work outside around his home. Despite his alleged loss of sensation of the bilateral hands, the claimant testified that he is able to dress himself, tie his shoes, button his buttons, prepare light meals and perform limited activities. He goes grocery shopping with his father with whom he resides, watches television, occasionally goes fishing and performs woodworking as a hobby when he can. These activities are certainly not consistent with the degree of debilitative neuropathy alleged.

Tr. 64 (citations to the record omitted). However, the ALJ did not completely discount Plaintiff's testimony. He found the subjective complaints "may have merit;" however "the totality of the medical evidence" did not comport with the alleged degree of debility. *Id.* On review, the ALJ's credibility assessment is supported by substantial evidence.

The record contains conflicting accounts of Plaintiff's abilities. Plaintiff testified both that he had reduced grip strength (Tr. 616), but also that he can go fishing and perform woodworking (Tr. 616), in addition to other daily activities such as dressing himself. Tr. 618. These conflicting accounts are sufficient to support an adverse credibility finding. Therefore, the ALJ was not in error. *See Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001) (adverse credibility finding will be set aside only for "compelling reason.").

**C. The ALJ Did Not Err by Relying on the Medical-Vocational Guidelines.**

Once the ALJ determined that Plaintiff did not have the RFC to perform his past relevant work, the burden shifted to the Commissioner to show that Plaintiff possessed the capacity to perform other substantial gainful activity existing in the national economy. *See Cole v. Sec'y of Health & Human Servs.,* 820 F.2d 768, 771 (6th Cir. 1987). "To meet this burden, there must be a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citations and quotations omitted). The Commissioner, in determining whether a claimant can perform a significant number of jobs in the national economy, can rely on either the Medical–Vocational Guidelines or the testimony of a vocational expert as to the availability of jobs. *See Damron v. Sec'y of Health & Human Servs.,* 778 F.2d 279, 281–82 (6th Cir. 1985). Where a claimant has "a nonexertional limitation that significantly limits the range of work permitted by his [or her] exertional limitations," the Commissioner may not rely solely on the Medical–Vocational Guidelines to satisfy this burden. *Collins v. Comm'r of Soc. Sec.,* 357 F. App'x 663, 670 (6th Cir. 2009) (quoting *Cole,* 820 F.2d at 771). But, "[b]efore reaching the conclusion that the grid will not

be applied because of the alleged nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Id.* (citing *Mullins v. Sec'y of Health & Human Servs.,* 836 F.2d 980, 985 (6th Cir. 1987).

Thus, the question is whether there was substantial evidence in the record to support a finding that Plaintiff's nonexertional limitations were not severe enough to significantly diminish the occupational base of sedentary work available to Plaintiff. The Court finds there is.

Plaintiff argues the "record is replete with references that [the Plaintiff] suffers from significant and painful diabetic neuropathy." Obj. at 5. He further argues this neuropathy presents significant postural and locomotive limitations**.** *Id.* at 5-6. However, the ALJ determined that Plaintiff could perform the "full range" of sedentary work, without limitation, because Plaintiff was capable of sitting six hours per day and walking up to two hours per day. The ALJ also found Plaintiff possessed "no communicative, environmental, manipulative, postural or visual limitations." Tr. 56.

The Court finds all of the ALJ's findings supported by substantial evidence in the record. There are multiple statements that Plaintiff can sit for durations typical to a sedentary workday. Tr. 337, 343-44, 610, 612-13. There is testimony attesting to Plaintiff's ability to handle objects. Tr. 61, 337. In addition, Dr. Frei testified that Plaintiff's postural limitations would not detract from his ability to perform a sedentary job. Tr. 58, 611. Therefore, the ALJ did not err by relying upon the Medical-Vocational Guidelines.

## IV.  CONCLUSION

The Court finds that the Magistrate Judge's finding that the Commissioner's denial of benefits to Plaintiff was supported by substantial evidence was not in error.  Therefore, the Court ADOPTS the Report and Recommendation of the Magistrate Judge and AFFIRMS the denial of benefits.

**IT IS SO ORDERED.**

**DATE: April 10,  2012**

   **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**